**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL 2, ALBANY, NEW YORK PENSION FUND, by its Administrator, Stephen J. O'Sick; BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL 2, ALBANY, NEW YORK HEALTH BENEFIT FUND, by its Administrator, Stephen J. O'Sick; BRICKLAYERS AND ALLIED CRAFTSMEN LOCAL 2 ANNUITY FUND, by its Administrator, Stephen J. O'Sick; BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL 2, ALBANY, NEW YORK EDUCATION & TRAINING FUND, by its Trustees, Pasquale Tirino, Kevin Potter, Thomas Marinello, Todd Helfrich and Laura Regan; BRICKLAYERS AND TROWEL TRADES INTERNATIONAL PENSION FUND, by David Stupar, Executive Director; BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL 2, ALBANY NEW YORK, AFL-CIO, by Pasquale Tirino, President; EASTERN CONTRACTORS ASSOCIATION, INC.; and CONSTRUCTION EMPLOYERS ASSOCIATION OF CNY, INC.; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **COMPLAINT**<br><br>Civil Action No.<br>1:20-cv-463 (MAD/CFH)<br>_____ |
| Plaintiffs, | ) ) | |
| Mainstream Specialties Inc.; Peter Stevens, individually and as an Officer of Mainstream Specialties Inc., | ) ) ) | |
| Defendants. | ) | |

Plaintiffs, by their undersigned attorneys, Blitman & King LLP, complaining of the Defendants,

respectfully allege as follows:

### I.     JURISDICTION AND VENUE

1.     This is an action arising under the Employee Retirement Income Security Act of 1974

[hereinafter "ERISA"] [29 U.S.C. §§1001 et seq.].  It is an action by fiduciaries of employee benefit plans

for monetary and injunctive relief to redress violations of ERISA Section 515 [29 U.S.C., §1145].  It is also

an action under Section 502(a)(2) for breach of fiduciary duty against employers that failed to timely

remit contributions and otherwise abide by the documents that establish and maintain an ERISA covered plan [29 U.S.C. §1132(a)(2)].

2.      This is also an action arising under Section 301(a) of the Labor-Management Relations Act of 1947, as amended [hereinafter "LMRA"] [29 U.S.C. §185(a)].  It is a suit for, among other things, violations of a contract between an employer and a labor organization representing employees in an industry affecting commerce as defined in the LMRA [29 U.S.C. §141 et seq.]

3.      Jurisdiction is conferred on this Court by ERISA Section 502(e) [29 U.S.C. §1132(e)], without respect to the amount in controversy or the citizenship of the parties, as provided in ERISA 502(f) [29 U.S.C. §1132(f)].  Jurisdiction is also conferred on this Court, without respect to the amount in controversy, pursuant to LMRA Section 301(a) [29 U.S.C. §185(a)], and pursuant to the laws of the United States of America [28 U.S.C. §1337].

4.      Venue is established in this Court by ERISA Section 502(e)(2) [29 U.S.C. §1132(e)(2)] and LMRA Section 301(c) [29 U.S.C. §185(c)].  It is an action brought in the district where the plans are administered and where the breach took place.

5.      Jurisdiction is conferred on this Court, without respect to the amount in controversy, pursuant to Section 301 of the Labor-Management Relations Act of 1947, as amended [29 U.S.C. §185(a)], and pursuant to federal law [28 U.S.C. §1337].

6.      This is also an action arising under 28 U.S.C. §1367.  It is an action where all non-federal claims raised in the Complaint are so related to the federal claims as to form part of the same case or controversy within the meaning of Article III of the United States Constitution such that this Court may exercise supplemental jurisdiction over those non-federal claims.

## II.   DESCRIPTION OF THE PARTIES

7.     Plaintiff Stephen J. O'Sick is the Administrator of the Bricklayers and Allied Craftworkers

Local 2, Albany, New York Pension Fund [hereinafter "Pension Fund"].  The Pension Fund is

administered within the Northern District of New York, at 300 Centre Drive, Albany, New York 12203.

Stephen J. O'Sick is a fiduciary of the Pension Fund, as defined in §3(21)(A) of the Act [29 U.S.C.

§1002(21)(A)].

8.     Plaintiff Stephen J. O'Sick is the Administrator of the Bricklayers and Allied Craftworkers

Local 2, Albany, New York Health Benefit Fund [hereinafter "Health Benefit Fund"].  The Health Benefit

Fund is administered within the Northern District of New York, at 300 Centre Drive, Albany, New York

12203.  Stephen J. O'Sick is a fiduciary of the Health Benefit Fund, as defined in §3(21)(A) of the Act [29

U.S.C. §1002(21)(A)].

9.     Plaintiff Stephen J. O'Sick is the Administrator of the Bricklayers and Allied Craftsmen

Local 2 Annuity Fund [hereinafter "Annuity Fund"].  The Annuity Fund is administered within the

Northern District of New York, at 300 Centre Drive, Albany, New York 12203.  Stephen J. O'Sick is a

fiduciary of the Annuity Fund, as defined in §3(21)(A) of the Act [29 U.S.C. §1002(21)(A)].

10.     Plaintiffs Pasquale Tirino, Kevin Potter, Thomas Marinello, Todd Helfrich and Laura Regan

are Trustees of the Bricklayers and Allied Craftworkers Local 2, Albany, New York Education and

Training Fund [hereinafter "Training Fund"].   Messrs. Tirino, Potter, Marinello and Helfrich and Ms.

Regan are fiduciaries of the Training Fund, as defined in §3(21)(A) of the Act [29 U.S.C. §1002(21)(A)].

The Training Fund is administered within the Northern District of New York, at 6 Airline Drive, Albany,

New York 12203.  The Training Fund receives, and is collection agent for, Promotional Fund monies and

International Masonry Institute ("IMI") monies.  The Pension Fund, Health Benefit Fund, Annuity Fund and Training Fund are collectively referred to as "Local 2 Funds"].

11.     Plaintiff David Stupar is the Executive Director of the Bricklayers & Trowel Trades International Pension Fund [hereinafter "IPF"].  Mr. Stupar is a fiduciary of the International Pension Fund, as defined in §3(21)(A) of the Act [29 U.S.C. §1002(21)(A)].  The IPF is administered at 620 F. Street, N.W., Suite 700, Washington, D.C. 20004.  The IPF has been delegated the authority to collect the monies due and owing to the Bricklayers and Allied Craftworkers International Union ["I.U."] and the International Masonry Institute ["IMI"], and is the collection agent for those entities.

12.     The Local 2 Funds and IPF [hereinafter referred to collectively as "Funds" or "Plans"], established pursuant to the collective bargaining agreement, are multi-employer plans, as defined in §3(37) of the Act [29 U.S.C. §1002(37)], and are employee benefit plans, as defined in §3(3) of the Act [29 U.S.C. §1002(3)].  The Local 2 Funds receive, and are collection agent for, the International Council of Employers of Bricklayers and Allied Craftworkers ("ICE") monies.

13.     Plaintiff Pasquale Tirino is the President of the Bricklayers and Allied Craftworkers Local 2, Albany New York, AFL-CIO [hereinafter "Union"].  The Union is an unincorporated association maintaining its principal offices at 302 Centre Drive, Albany, New York 12203 and is a labor organization in an industry affecting commerce, within the meaning of the Labor-Management Relations Act of 1947, as amended [29 U.S.C. §141, et seq.].  The Union receives employee assessment deductions and is collection agent for the Bricklayers and Allied Craftworkers Local No. 2 Albany, NY Benefit and Defense Fund ["Defense and Benefit Fund"], the Bricklayers and Allied Craftworkers Political Action Committee ["PAC"], and vacation monies.

14.     Eastern Contractors Association, Inc. [hereinafter "ECA"] is a corporation incorporated under the laws of the State of New York and has a principal place of business and offices at 6 Airline Drive, Albany, NY 12205.  The ECA receives industry fund monies.

15.     Construction Employers Association of CNY, Inc. [hereinafter "CEA"] is a corporation incorporated under the laws of the State of New York and has a principal place of business and offices at 6563 Ridings Road, Syracuse, NY 13206.  The CEA receives industry fund monies.

16.     Upon information and belief, Defendant Mainstream Specialties Inc. [hereinafter referred to as "Defendant Mainstream", "Corporation" or "Company"] is a corporation incorporated under the laws of the State of New York, has a principal place of business and offices at 11 Old Town Road, Selkirk, NY 12158, County of Albany, and at all times relevant herein, was authorized to do, and was doing, business in the State of New York.

17.     Upon information and belief, Defendant Peter Stevens ["Defendant Stevens"] resides at 11 Old Town Road, Selkirk, NY 12158, County of Albany, and, at all relevant times herein, was President, Owner, and/or Officer of Defendant Mainstream.

18.     Defendants are employers in an industry affecting commerce, all as defined in ERISA Section 3(5)(11) and (12) [29 U.S.C. § 1002(5)(11) and (12)].  Defendants are also employers of employees covered by an employee benefit plan and multiemployer plan maintained pursuant to a collective bargaining agreement, all as defined in ERISA Sections 3(3) and (37) [29 U.S.C. § 1002(3) and (37)], and are obligated to make contributions to the Funds in accordance with ERISA Section 515 [29 U.S.C. § 1145].

19.     Defendants are parties in interest with respect to the Funds as defined in ERISA Section

3(14)(C), (E) and (H) [29 U.S.C. § 1002(14)(C), (E) and (H)] and act directly as employers and/or indirectly

in the interests of the employers in relation to the Funds, all as defined in ERISA Section 3(5) [29 U.S.C.

§ 1002(5)].

20.     To the extent that Defendants exercised any authority or control with respect to the

management or disposition of assets of Plaintiff Funds, they are fiduciaries within the meaning of ERISA

Section 3(21)(A) [29 U.S.C. §1002(21)(A)].

### III.     FIRST CAUSE OF ACTION

21.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1"

through "20" inclusive of this Complaint as if set forth fully at this point.

22.     Section 515 of the Act [29 U.S.C. §1145] provides that:

> Every employer who is obligated to make contributions to a multi-
> employer plan under the terms of the plan or under the terms of a
> collectively bargained agreement shall, to the extent not
> inconsistent with law, make such contributions in accordance with
> the terms and conditions of such plan or such agreement.

23.     At all times relevant herein, Defendant Corporation was party to a Building Agreement

between Eastern Contractors Association, Inc. and Bricklayers and Allied Craftworkers Local Union No.

2, NY. Albany, N.Y., effective May 1, 2008 through April 30, 2013 [hereinafter referred to as "2008-2013

CBA"].

24.     At all times relevant herein, Defendant Corporation was party to a Building Agreement

between Eastern Contractors Association, Inc., Construction Employers Association of CNY, Inc. and

Bricklayers and Allied Craftworkers Local Union No. 2, NY, Albany, N.Y. effective May 1, 2015 through

May 31, 2021 for Albany/Plattsburgh Areas and effective June 1, 2015 through May 31, 2021 for

Syracuse/Utica/Watertown areas [hereinafter referred to as "2015-2021 CBA"] [collectively the 2008-2013 CBA and 2015-2021 CBA are referred to as "CBAs"].  The CBAs automatically renewed and remain in full force and effect.

25.     Pursuant to the CBAs,  Defendant Mainstream is bound by the terms and conditions, rules and regulations of the Amended and Restated Agreement and Declaration of Trust of the Pension Fund, the Agreement and Declaration of Trust of the Health Benefit Fund, the Amended and Restated Agreement and Declaration of Trust of the Annuity Fund, the Amended and Restated Agreement and Declaration of Trust of the Training Fund, the Agreement and Declaration of Trust of the IPF, [hereinafter collectively referred to as "Trusts"] the Restated and Amended Collections Policy of the Pension Fund, Health Benefit Fund, Annuity Fund and Training Fund and the Collections Procedures of the Central Collection Unit of the Bricklayers and Allied Craftworkers [hereinafter collective referred to as "Collections Policies"].

26.     The CBAs, Trusts and Collections Policies obligate Defendant Corporation to submit its reports and remit contributions to Plaintiffs Funds for each hour that its employees performed work covered by the CBAs, i.e., bricklayers', plasterers' and masons' work or bargaining unit work.

27.     Under the Pension Protection Act ["PPA"], as of April 1, 2009, Defendant Corporation is statutorily liable for a fifteen percent (15%) increase in Plaintiff IPF's contribution rate in effect on March 31, 2009 until such rate expires.

28.     The CBAs require Defendant Corporation to deduct stipulated sums from the wages of certain employees who performed work covered by the CBA and pay said amounts to Plaintiff Union, said amounts representing local employee dues assessment monies, defense and benefit fund deductions, PAC monies, and vacation monies.

29.     The CBAs require Defendant Corporation to deduct stipulated sums from the wages of certain employees who performed work covered by the CBA and pay said amounts to the IPF, said amounts representing IU employee dues assessment monies.

30.     The CBAs require Defendant Corporation to remit certain monies to ECA or CEA representing Industry Fund monies.

31.     The CBAs require Defendant Corporation to remit certain monies to the International Council of Employers of Bricklayers and Allied Craftworkers ("ICE").  The Local 2 Funds are the collection agent and conduit through which these monies flow.

32.     The CBAs, Trusts and Collections Policies obligate Defendant Corporation to file its remittance reports and remit the contributions and deductions to Plaintiffs by the fifteenth (15th) day of the month following the month during which the hours were worked by its employees.

33.     Under the CBAs, the Trusts, the Collections Policies, PPA and ERISA Sections 515 and 502(g)(2) [29 U.S.C. §§1132(g)(2), 1145], if Defendant Corporation fails to timely remit the required contributions and deductions, it is liable for the amount of contributions and deductions due, plus the following:  (1) interest on the unpaid and untimely paid Pension, Health Benefit, Annuity and Training Funds contributions, at the rate of twelve percent (12%) per annum; plus (2) the greater of interest on the unpaid and untimely paid Pension, Health Benefit, Annuity and Training Funds contributions or liquidated damages equal to twenty percent (20%) of those delinquent contributions; plus (3) interest on unpaid and untimely paid IMI monies and I.U. dues, at the rate of fifteen percent (15%) per annum; plus (6) interest on the unpaid and untimely paid IPF contributions, at the rate of fifteen percent (15%) per annum; plus (7) the greater of interest on the unpaid and untimely paid IPF contributions or liquidated damages equal to twenty percent (20%) of those delinquent contributions; plus (8) interest

on the unpaid and untimely paid local employee dues assessment, defense and benefit fund monies, vacation monies, PAC monies, promotion fund monies, I.C.E. monies, and Industry Fund monies, at the rate of nine percent (9%) per annum; plus (9) costs and fees of collection and attorneys' and paralegal fees.

34.     According to an audit, dated October 29, 2018, of Defendant Corporation's records for the period January 2013 through December 2017, Defendant Corporation owes $65,276.58 in contributions and deductions, representing $49,581.55 in delinquent Pension, Health Benefit and Annuity Funds contributions; $728.78 in delinquent Training Fund contributions; $3,306.18 in delinquent IMI monies and I.U. dues; $1,856.93 in delinquent IPF contributions; $4,990.32 in delinquent local employee dues assessment; $276.90 in delinquent defense and benefit fund monies; $2,769.00 in delinquent vacation monies; $221.52 in delinquent PAC monies; $83.07 in delinquent I.C.E. monies; $535.95 in delinquent promotional fund monies; and $926.38 in delinquent Industry Fund monies with regard to hours worked by employees covered by the aforesaid CBAs during the period January 2013 through December 2017.

35.     Defendant Corporation has not paid the fringe benefit contributions outlined in paragraph no. 34 and has not paid the interest, liquidated damages, costs and fees of collection and attorneys' fees due and owing in connection with the delinquent fringe benefit contributions.

36.     Defendant Corporation, therefore, owes $65,276.58 in contributions and deductions plus the following:  (1) interest on the $49,581.55 in delinquent Pension, Health Benefit and Annuity Funds contributions, at the rate of twelve percent (12%) per annum; plus (2) the greater of interest on the $49,581.55 in delinquent Pension, Health Benefit and Annuity Funds contributions or liquidated damages equal to twenty percent (20%) of those delinquent contributions; plus (3) interest on the

$728.78 in delinquent Training Fund contributions, at the rate of twelve percent (12%) per annum; plus (4) the greater of interest on the $728.78 in delinquent Training Fund contributions or liquidated damages equal to twenty percent (20%) of those delinquent contributions; plus (5) interest on the $3,306.18 in delinquent IMI monies and I.U. dues, at the rate of fifteen percent (15%) per annum; plus (6) interest on the $1,856.93 in delinquent IPF contributions, at the rate of fifteen percent (15%) per annum; plus (7) the greater of interest on the $1,856.93 in delinquent IPF contributions or liquidated damages equal to twenty percent (20%) of those delinquent contributions; plus (8) interest on the $9,803.14 in delinquent local employee dues assessment, defense and benefit fund monies, vacation monies, PAC monies, I.C.E. monies, promotional fund monies, and industry fund monies, at the rate of nine percent (9%) per annum; plus (9) costs and fees of collection and attorneys' and paralegal fees.

### IV.    SECOND CAUSE OF ACTION

37.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "36" inclusive of this Complaint as if set forth fully at this point.

38.    According to remittance reports prepared and submitted by Defendant Corporation for the period November 2017 through August 2018, Defendant Corporation owes $8,589.83 in contributions and deductions with regard to hours worked by employees covered by the aforesaid CBAs during the period November 2017 through August 2018.

39.    Defendant Corporation has not paid the fringe benefit contributions outlined in paragraph no. 38 and has not paid the interest, liquidated damages, costs and fees of collection and attorneys' fees due and owing in connection with the delinquent fringe benefit contributions.

40.     Defendant Corporation, therefore, owes $8,589.83 in contributions and deductions plus interest and liquidated damages on the following:  (1) interest on the $6,436.50 in delinquent Pension, Health Benefit and Annuity Funds contributions, at the rate of twelve percent (12%) per annum; plus (2) the greater of interest on the $6,436.50 in delinquent Pension, Health Benefit and Annuity Funds contributions or liquidated damages equal to twenty percent (20%) of those delinquent contributions; plus (3) interest on the $122.15 in delinquent Training Fund contributions, at the rate of twelve percent (12%) per annum; plus (4) the greater of interest on the $122.15 in delinquent Training Fund contributions or liquidated damages equal to twenty percent (20%) of those delinquent contributions; plus (5) interest on the $429.27 in delinquent IMI monies and I.U. dues, at the rate of fifteen percent (15%) per annum; plus (6) interest on the $261.75 in delinquent IPF contributions, at the rate of fifteen percent (15%) per annum; plus (7) the greater of interest on the $261.75 in delinquent IPF contributions or liquidated damages equal to twenty percent (20%) of those delinquent contributions; plus (8) interest on the $1,340.16 in delinquent local employee dues assessment, defense and benefit fund monies, vacation monies, PAC monies, I.C.E. monies, promotional fund monies, and industry fund monies, at the rate of nine percent (9%) per annum; plus (9) costs and fees of collection and attorneys' and paralegal fees.

## V.      THIRD CAUSE OF ACTION

41.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "40".

42.     The CBAs, Trusts and Collections Policies obligate Defendant Corporation to permit Plaintiffs, on demand, to check, examine and audit its books and records, including its payroll records,

relating to hours worked by its employees, including Union, non-Union, bargaining unit and non-bargaining unit employees.

43.     Defendant Corporation is contractually liable under the Trusts and Collections Policies to pay the costs and expense of the audit, all auditing fees, and any and all attorneys' and paralegal fees and costs incurred by the Plaintiffs in obtaining an audit.

44.     Defendant Corporation is contractually liable under the CBAs, Trusts and Collections Policies to timely report on a monthly basis the number of hours worked by all of its employees performing bargaining unit work.

45.     Defendant Corporation is statutorily obligated to maintain accurate and complete books and records of the number of hours of bargaining work, i.e., bricklayers', plasterers' and masons' work, performed by all of its employees.

46.     Defendant Corporation must be ordered to produce its books and records for Plaintiffs' review and audit for the period January 2018 to date, to pay the cost and expense of such audit, to pay all auditing fees, and to pay all attorneys' and paralegal fees and costs incurred in obtaining that audit.

47.     In the event it is discovered that Defendant Corporation has not properly submitted accurate reports to the Plaintiffs and has not properly paid the appropriate monies to the Plaintiffs, the Court must enter a judgment for any and all contributions and deductions that are determined to be due, plus the applicable interest thereon, liquidated damages, costs and expenses of collection, audit fees and attorneys' and paralegal fees, at the rates set forth in paragraph no. 33.

## VI.   FOURTH CAUSE OF ACTION

48.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1"

through "47" inclusive of this Complaint, as if fully set forth at this point.

49.     Pursuant to the Collections Policy, if Defendant Corporation does not produce complete

and accurate records for review and audit by Plaintiffs, the Plaintiff Funds are entitled to implement a

formula audit that allows them to presume that the Defendants' employees performed a minimum of

forty (40) hours per week of bargaining unit work for fifty-one (51) weeks during the calendar year.

50.     If Defendant Corporation does not produce accurate and complete books and records of

the number of hours of bargaining unit work performed by their employees, the Plaintiff Funds are

entitled to implement their formula audit in accordance with the Collections Policy and the Court may

enter judgment for any and all contributions that are determined to be due pursuant to that formula,

plus the applicable interest thereon, liquidated damages, costs and expenses of collection, audit fees

and attorney and paralegal fees, all at the rates set forth in the Complaint paragraph no. 33.

## VII.  FIFTH CAUSE OF ACTION

51.     Plaintiffs repeat and reallege each and every allegation contained in Paragraphs "1"

through "50" inclusive of this Complaint as if set forth fully at this point.

52.     Absent an exemption, ERISA Section 406(a) makes it unlawful for fiduciaries to permit

ERISA covered plans to engage in certain transactions with parties in interest, including transactions

that exchange property or extend credit [29 U.S.C. §1106(a)(1)(A) and (B)].  Absent an exemption, ERISA

Section 406(b) makes it unlawful for fiduciaries to deal with plan assets for their personal account [29

U.S.C. §1106(b)(1)-(3)].

53.      Section 406 of the Act [29 U.S.C. §1106] provides that the following is illegal:

(A)      sale or exchange, or leasing, of any property between the plan and a party in interest;

(B)      lending of money or other extension of credit between the plan and a party in interest;

(C)      furnishing of goods, services, or facilities between the plan and a party in interest; or

(D)      transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan.

54.      At all times relevant herein, Defendant Stevens was party in interest with respect to the Plaintiff Funds because he was a fiduciary, employer, or owner within the meaning of ERISA Section 3(14)(A), (C) and (E) [29 U.S.C. §1002(14)(A), (C) and (E)].

55.      The Collections Policy of the Pension Fund, Annuity Fund, Health Benefit Fund and Training Fund provides that title to all monies paid into and/or due and owing to the Local 2 Funds shall be vested in and remain exclusively in the Trustees of the Local 2 Funds.  Outstanding and withheld contributions constitute Plan assets.

56.      The Trusts of the Pension Fund, Annuity Fund, Health Benefit Fund, Training Fund and IPF provide that all right, title and interest in and to the contributions is vested in the Trustees of the Funds.

57.      Defendants did not remit at least $52,167.26 in contributions to the Plaintiff Funds as required by the CBA, Trusts and Collections Policies as referenced in paragraph nos. 34 and 38 herein.

58.      Defendants have not produced all of Defendant Corporation's records for Plaintiffs' review and audit so that Plaintiffs can determine the extent of Defendants' delinquency with the Plaintiff Funds for the period January 2018 to date.

59.     To the extent that Defendant Stevens has withheld at least $52,167.26 in contributions from the Plaintiff Funds, Defendant Stevens has received and retained from the Plaintiff Funds for his own personal use and benefit, monies which are rightfully assets of the Plaintiff Funds.

60.     To the extent that Defendant Stevens has withheld, received and retained at least $52,167.26 in contributions owed to Plaintiff Funds, Defendant Stevens, as party in interest, impermissibly used the assets of the Plaintiff Funds in contravention of §406 of the Act, the interests of the Plaintiff Funds and the interests of the Plaintiff Funds' fiduciaries, participants and beneficiaries.

61.     To the extent that the audit shows that Defendants have not paid contributions to the Plaintiff Funds, Defendant Stevens has received and retained from the Plaintiff Funds for his own personal use and benefit, monies which are rightfully assets of the Plaintiff Funds, impermissibly used the assets of the Plaintiff Funds in contravention of §406 of the Act, the interests of the Plaintiff Funds and the interests of the Plaintiff Funds' fiduciaries, participants and beneficiaries and damaged the Plaintiff Funds to the extent of these unpaid contributions.

62.     Defendant Stevens, therefore, has damaged the Plaintiff Funds and is liable to Plaintiff Funds for the following:

(A)     The $52,167.26 due to the Plaintiff Funds as set forth at paragraph nos. 34 and 38 plus interest thereon at the consolidated rate of return on Plaintiff Funds' investments, costs and expenses of collection, audit fees and attorneys' and paralegal fees;

(B)     Any monies discovered to be due to the Plaintiff Funds as uncovered by the audit sought at paragraph nos. 46 and 47 of the Complaint herein plus interest thereon at the consolidated rate of return on Plaintiff Funds' investments, costs and expenses of collection, audit fees and attorneys' and paralegal fees; and

(C)     to restore to the Plaintiff Funds any profits that Defendant Stevens made through use and retention of the assets of the Plaintiff Funds.

## VIII.   SIXTH CAUSE OF ACTION

63.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "62" of this Complaint as if fully set forth herein.

64.     ERISA Section 404(a) provides that fiduciaries must discharge their duties with respect to an ERISA covered plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of providing benefits" and "defraying reasonable administrative expenses" [29 U.S.C. §1104(a)(1)(A)].

65.     ERISA Section 404(a) also provides that fiduciaries must discharge their duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments" are consistent with federal law [29 U.S.C. §1104(a)(1)(D)].

66.     Absent an exemption, ERISA Section 406, 29 U.S.C. §1106, makes it unlawful for fiduciaries to permit ERISA covered plans to engage in certain transactions with parties in interest, including transactions that exchange property or extend credit and to deal with plan assets for their personal account.

67.     New York Lien Law Article 3-A provides that construction contractors and their officers, shareholders, directors, managers and agents must use monies earned for work at a construction project to pay the cost of, among other things, the employees' wages and benefits.

68.     The Trusts of the Pension Fund, Annuity Fund, and Health Benefit Fund provide that title

to all the monies paid into and/or due and owing to the Plaintiff Local 2 Funds is vested in and remains

exclusively in the Trustees of the Local 2 Funds; outstanding and withheld contributions constitute Plan

assets.

69.     The Trusts of the Pension Fund, Annuity Fund, Health Benefit Fund, Training Fund and

IPF provide that all right, title and interest in and to the contributions is vested in the Trustees of the

Plaintiff Funds.

70.     Upon information and belief, during the period January 2013 to date and in connection

with the CBAs, Defendant Corporation employed individuals covered by the CBAs who performed work

for the Defendants.

71.     Upon information and belief, as a result of the work performed by employees,

Defendants received sums of money which were to be used to pay, among other things, the wages and

benefits of employees furnishing and supplying the labor.

72.     Defendants are fiduciaries of the monies so received and the monies so received and

held by them constitute assets of the Plaintiff Funds to be utilized for the benefit of the Plaintiff Funds.

73.     Defendant Stevens, upon information and belief, has withheld contributions from the

Plaintiff Funds and has received and retained from the Plaintiff Funds, for his own personal use and

benefit, monies which are rightfully assets of the Plaintiff Funds.

74.     Defendant Stevens, upon information and belief, owned, controlled, and dominated the

affairs of Defendant Company.

75.     Defendant Stevens, upon information and belief, had managerial discretion and control over Defendant Company, made decisions on behalf of the Defendants Company, signed contracts governing the Defendant Corporation, and/or acted on behalf of and in the interest of the Defendant Corporation in its dealings and relations with Plaintiff Funds.

76.     Upon information and belief, Defendant Stevens determined which bills and creditors Defendant Corporation would pay, determined when Plaintiff Funds would be paid, determined how much money would be paid to the Plaintiff Funds, determined which employees of the Defendant Corporation would be reported to the Plaintiff Funds, determined the number of hours upon which contributions would be reported as owing to the Plaintiff Funds, and exercised control over money due and owing to the Plaintiff Funds, i.e., the Plan assets, and, therefore, was a fiduciary.

77.     Upon information and belief, Defendant Stevens transferred, applied or diverted, or permitted the transfer, application, use, or diversion of, the Plaintiff Funds' trust assets to purposes other than purposes of the Plaintiff Funds without first making payment to Plaintiff Funds, Defendant Stevens acted contrary to his fiduciary obligations and he is guilty of breaching his fiduciary duty under ERISA, 29 U.S.C. §§1104, 1106 and 1109, and the New York Lien Law.

78.     To the extent that Defendant Stevens used, or permitted the use of, the Plaintiff Funds' assets to pay other creditors of the Defendant Corporation rather than forwarding the assets to the Plaintiff Funds, he is guilty of breaching his fiduciary duties.

79.     To the extent the transfer of the assets to persons other than the Plaintiff Funds occurred, and/or the use of the assets for purposes other than those permitted by the Plaintiff Funds occurred, upon information and belief, with the knowledge and/or at the direction of Defendant Stevens, he has breached his fiduciary duties.

80.     To the extent that Defendant Stevens used the Plaintiff Funds' assets for purposes other than the interests of the Plaintiff Funds and their participants and beneficiaries, Defendant Stevens is a violation of §§1104, 1106, and, 1109 of ERISA and the New York Lien Law.

81.     To the extent Defendant Stevens has withheld contributions from the Plaintiff Funds and/or untimely paid contributions to the Plaintiff Funds, he has not acted solely in the interests of the participants and beneficiaries and he has acted contrary to the Plaintiff Funds' documents, and, therefore, he is individually and personally liable for the violations of ERISA Sections 404 and 406 described herein [29 U.S.C. §§1104 and 1106].

82.     To the extent that the audit and/or remittance reports show that Defendant Stevens has not paid contributions to the Plaintiff Funds, Defendant Stevens has breached his fiduciary duties and he is liable to Plaintiffs Funds for the following:

(A)     The $52,167.26 due to the Plaintiff Funds as set forth at paragraph nos. 34 and 38 plus interest thereon at the consolidated rate of return on Plaintiff Funds' investments, costs and expenses of collection, audit fees and attorneys' and paralegal fees;

(B)     Any monies discovered to be due to the Plaintiff Funds as uncovered by the audit sought at paragraph nos. 46 and 47 of the Complaint herein plus interest thereon at the consolidated rate of return on Plaintiff Funds' investments, costs and expenses of collection, audit fees and attorneys' and paralegal fees; and

(C)     to restore to the Plaintiff Funds any profits that Defendant Stevens made through use and retention of the assets of the Plaintiff Funds.

## X.     PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

1.     On Plaintiffs' First Cause of Action, judgment against Defendant Corporation for $65,276.58 in contributions and deductions plus the following:  (1) interest on the $49,581.55 in

delinquent Pension, Health Benefit and Annuity Funds contributions, at the rate of twelve percent (12%) per annum; plus (2) the greater of interest on the $49,581.55 in delinquent Pension, Health Benefit and Annuity Funds contributions or liquidated damages equal to twenty percent (20%) of those delinquent contributions; plus (3) interest on the $728.78 in delinquent Training Fund contributions, at the rate of twelve percent (12%) per annum; plus (4) the greater of interest on the $728.78 in delinquent Training Fund contributions or liquidated damages equal to twenty percent (20%) of those delinquent contributions; plus (5) interest on the $3,306.18 in delinquent IMI monies and I.U. dues, at the rate of fifteen percent (15%) per annum; plus (6) interest on the $1,856.93  in delinquent IPF contributions, at the rate of fifteen percent (15%) per annum; plus (7) the greater of interest on the $1,856.93 in delinquent IPF contributions or liquidated damages equal to twenty percent (20%) of those delinquent contributions; plus (8) interest on the $9,803.14 in delinquent local employee dues authorization, defense and benefit fund monies, vacation monies, PAC monies, I.C.E. monies, promotional fund monies, and Industry Fund monies, at the rate of nine percent (9%) per annum; plus (9) costs and fees of collection and attorneys' and paralegal fees.

2.      On Plaintiffs' Second Cause of Action, judgment against Defendant Corporation for $8,589.83 in contributions and deductions plus interest and liquidated damages on the following:  (1) interest on the $6,436.50 in delinquent Pension, Health Benefit and Annuity Funds contributions, at the rate of twelve percent (12%) per annum; plus (2) the greater of interest on the $6,436.50 in delinquent Pension, Health Benefit and Annuity Funds contributions or liquidated damages equal to twenty percent (20%) of those delinquent contributions; plus (3) interest on the $122.15 in delinquent Training Fund contributions, at the rate of twelve percent (12%) per annum; plus (4) the greater of interest on the $122.15 in delinquent Training Fund contributions or liquidated damages equal to twenty percent

(20%) of those delinquent contributions; plus (5) interest on the $429.27 in delinquent IMI monies and I.U. dues, at the rate of fifteen percent (15%) per annum; plus (6) interest on the $261.75 in delinquent IPF contributions, at the rate of fifteen percent (15%) per annum; plus (7) the greater of interest on the $261.75 in delinquent IPF contributions or liquidated damages equal to twenty percent (20%) of those delinquent contributions; plus (8) interest on the $1,340.16 in delinquent local employee dues assessment, defense and benefit fund monies, vacation monies, PAC monies, I.C.E. monies, promotional fund monies, and industry fund monies, at the rate of nine percent (9%) per annum; plus (9) costs and fees of collection and attorneys' and paralegal fees.

3.      On Plaintiffs' Third and Fourth Causes of Action, judgment against Defendant Corporation:

(A)     Requiring it to produce its books and records for Plaintiffs' review and audit for the period January 2018 to date, to pay the cost and expense of such audit, to pay all auditing fees, and to pay all attorneys and paralegal fees and costs incurred in obtaining that audit; and

(B)     For any and all contributions and deductions that are determined to be due pursuant to the audit or formula audit, plus the applicable interest thereon, liquidated damages, costs and expenses of collection, audit fees and attorneys and paralegal fees, all at the rates set forth in Complaint paragraph no. 33.

4.      On Plaintiffs' Fifth and Sixth Causes of Action, judgment against Defendant Stevens for the following:

(A)     The $52,167.26 due to the Plaintiff Funds as set forth at paragraph nos. 34 and 38 plus interest thereon at the consolidated rate of return on Plaintiff Funds' investments, costs and expenses of collection, audit fees and attorneys' and paralegal fees;

(B)     Any monies (i) discovered to be due to the Plaintiff Funds as uncovered by the audit sought at paragraph nos. 46 and 47 of the

Complaint herein plus interest thereon at the consolidated rate of return on Plaintiff Funds' investments, costs and expenses of collection, audit fees and attorneys' and paralegal fees; and

(C)     to restore to the Plaintiff Funds any profits that Defendant Stevens made through use and retention of the assets of the Plaintiff Funds.

Dated: April 23, 2020

BLITMAN & KING LLP

By: _____

Jennifer A. Clark, Esq.
Bar Roll No.: 101356
Attorneys for Plaintiffs
Office and Post Office Address
Franklin Center, Suite 300
443 North Franklin Street
Syracuse, New York 13204
Telephone:  (315) 422-7111
Facsimile:  (315) 471-2623
E-Mail:  jaclark@bklawyers.com

{B0125357.4}