UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**BRICKLAYERS AND ALLIED CRAFTWORKERS
LOCAL 2, ALBANY, NEW YORK PENSION FUND,**
*by its Administrator, Stephen J. O'Sick*; **BRICKLAYERS
AND ALLIED CRAFTWORKERS LOCAL 2, ALBANY,
NEW YORK HEALTH BENEFIT FUND,** *by its
Administrator, Stephen J. O'Sick*; **BRICKLAYERS
AND ALLIED CRAFTSMAN LOCAL 2 ANNUITY FUND,**
*by its Administrator, Stephen J. O'Sick*; **BRICKLAYERS AND
ALLIED CRAFTSWORKERS LOCAL 2, ALBANY, NEW YORK
EDUCATION & TRAINING FUND,** *by its Trustees, Pasquale
Tirino, Kevin Potter, Thomas Marinello, Todd Helfrich and
Laura Regan*; **BRICKLAYERS AND TROWEL TRADES
INTERNATIONAL PENSION FUND,** *by David Stupar,
Executive Director*; **BRICKLAYERS AND ALLIED
CRAFTWORKERS LOCAL 2, ALBANY NEW YORK, AFL-CIO,**
*by Pasquale Tirino, President*; **EASTERN CONTRACTORS
ASSOCIATION, INC.; CONSTRUCTION EMPLOYERS
ASSOCIATION OF CNY, INC.,**

         **Plaintiffs,**

 vs.             **1:20-CV-463
                   (MAD/CFH)**

**MAINSTREAM SPECIALTIES INC.; PETER STEVENS,**
*Individually and as an Officer of Mainstream Specialties Inc.*,

         **Defendants.**
_____

**APPEARANCES:**        **OF COUNSEL:**

**BLITMAN, KING LAW FIRM –**   **JENNIFER A. CLARK, ESQ.**
**SYRACUSE OFFICE**
Franklin Center
443 North Franklin Street
Suite 300
Syracuse, New York 13204
Attorneys for Plaintiffs

**Mae A. D'Agostino, U.S. District Judge:**

        **MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

On April 23, 2020, Plaintiffs Bricklayers and Allied Craftworkers Local 2, Albany New York, AFL-CIO, Bricklayers and Allied Craftworkers Local 2, Albany, New York Health Benefit Fund, Bricklayers and Allied Craftworkers Local 2, Albany, New York Education & Training Fund, Bricklayers and Trowel Trades International Pension Fund, Bricklayers and Allied Craftsmen Local 2 Annuity Fund, Bricklayers and Allied Craftworkers Local 2, Albany New York Pension Fund (collectively, the "Funds"), Construction Employers Association of CNY, Inc., and Eastern Contractors Association Inc. commenced this action against Defendants Mainstream Specialties Inc. ("Mainstream Specialties") and Peter Stevens for failing to timely remit benefit contributions and deductions under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185.  *See* Dkt. No. 1.  Presently before the Court is Plaintiffs' motion for default judgment.  *See* Dkt. No. 13.  For the following reasons, the motion is granted.

## II. BACKGROUND

Defendant Mainstream Specialties is a New York corporation and Defendant Peter Stevens was, at all times relevant, the President, Owner, and/or Officer of Defendant Mainstream Specialties.  *See* Dkt. No. 1 at ¶¶ 16-17.  Plaintiffs — who are fiduciaries or recipients of the Funds and the President of the Union — allege that Mainstream Specialties is a party to certain agreements and trusts requiring it to remit contributions and deductions to Plaintiffs, and that Mainstream Specialties and Defendant Stevens have failed to do so.  *See id.* at ¶¶ 23-26.

## III. DISCUSSION

**A.     Standard of Review**

2

"Generally, 'Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant.'" *United States v. Simmons*, No. 10-CV-1272, 2012 WL 685498, *2 (N.D.N.Y. Mar. 2, 2012) (quoting *Robertson v. Doe*, No. 05-CV-7046, 2008 WL 2519894, *3 (S.D.N.Y. June 19, 2008)). "'First, under Rule 55(a), when a party fails "to plead or otherwise defend ... the clerk must enter the party's default."'" *Id.*; *see also* Fed. R. Civ. P. 55(a). "'Second, pursuant to Rule 55(b)(2), the party seeking default is required to present its application for entry of judgment to the court.'" *Id.* "'Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default judgment.'" *Id.*; *see also* Fed. R. Civ. P. 55(b)(2).

"When a default is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability." *Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 188 (E.D.N.Y. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). "While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974) (citations omitted); *see also Bravado Int'l*, 655 F. Supp. 2d at 189-90 (citation omitted). "[E]ven upon default, a court may not rubber-stamp the non-defaulting party's damages calculation, but rather must ensure that there is a basis for the damages that are sought." *Overcash v. United Abstract Group, Inc.*, 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). "The burden is on the plaintiff to establish its entitlement to recovery." *Bravado Int'l*, 655 F. Supp. 2d at 189 (citing *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158). "While 'the court

must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing.'" *Id.* at 190 (citation omitted).

**B.     Default Motion**

   *1. Judgment Against Mainstream Specialties*

In the present matter, the summons and amended complaint were properly served on Mainstream Specialties on May 1, 2020, and the Clerk of the Court entered default against Mainstream Specialties on June 3, 2020.  *See* Dkt. Nos. 5-6, 9.  Because Mainstream Specialties has failed to appear in this action, it is deemed to have admitted all well pleaded, relevant factual allegations for the purposes of establishing liability.  *See Bravado Int'l*, 655 F. Supp. 2d at 188; *see also United States v. Beam*, No. 12-CV-0087, 2012 WL 1802316, *2 (N.D.N.Y. May 17, 2012) ("By failing to answer plaintiff's complaint or oppose this motion, defendant has effectively conceded that [it] is bound by the terms of the [agreement it] entered into with plaintiff ....").

Under ERISA, an employer that is required to make contributions to a multiemployer benefit plan "must make such contributions in accordance with the terms and conditions of such plan or [collectively bargained] agreement." 29 U.S.C. § 1145.  Here, Plaintiffs allege that Defendants are bound by an agreement requiring them to submit reports and remit contributions to the Funds for each hour worked by certain employees to be paid to the union and various pension and benefit funds.  *See* Dkt. No. 1 at ¶¶ 23-31.  Mainstream Specialties failed to make the required contributions and deductions and is therefore liable to Plaintiffs for those unpaid contributions and deductions.  *See id.* at ¶¶ 34-35.  Additionally, ERISA provides for statutory damages as follows:

> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,

>> (C) an amount equal to the greater of —
>>> (i) interest on the unpaid contributions, or
>>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

Here, Plaintiffs request an award of $175,649.71 against Mainstream Specialties, consisting of unpaid contributions and deductions, interest, liquidated damages, audit fees, and attorneys' fees and costs. *See* Dkt. No.13-32 at 6-11. Plaintiffs also request an award of $90,077.74 against Defendant Stevens, consisting of unpaid contributions and deductions, interest, attorneys' fees, audit fees, and costs. *See id.* at 12-19.

### 2. Damages

#### a. Contributions and Deductions

Plaintiffs claim that audits and remittance reports from the period from January 2013 through December 2017 and November 2017 through August 2018 show that Mainstream Specialties owe $73,866.41 in unpaid contributions and deductions. *See* Dkt. No. 1 at ¶¶ 36, 38; Dkt. No. 13-32 at 9. After reviewing Plaintiffs' motion and supporting documentation, the Court awards Plaintiffs $73,866.41 in unpaid contributions and deductions.

#### b. Interest

The decision of whether to grant prejudgment interest is at the discretion of the district court, but the court must "explain and articulate its reasons for any decision regarding prejudgment interest." *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 622-23 (2d Cir. 2006). "Prejudgment interest is intended to serve 'as compensation for the use of money withheld' and to put 'the plan in the position it would have occupied but for the breach.'" *Upstate N.Y. Eng'rs Health Fund v. Oneidaview Pile Driving, Inc.*, No. 15-CV-512, 2017 WL 1483446, *5 (N.D.N.Y. Apr. 25, 2017) (quoting *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 286 (2d Cir. 1992), *abrogated on other grounds by Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182 (2d Cir. 2015)). "Assessing the appropriate amount of interest requires a comparison of what the plan earned during the time in question and what it would have earned had the money lost due to the breach been available." *Diduck*, 974 F.2d at 286.

Here, Plaintiffs request $32,500.76 in interest on unpaid and untimely contributions to compensate for lost investment income. *See* Dkt. No. 13-32 at 8; Dkt. No. 13-1 at ¶ 19. After reviewing Plaintiffs' submissions, the Court finds this sum reasonable in order to make Plaintiffs whole for lost investment income.

### c. Liquidated Damages

As the noted above, 29 U.S.C. § 1132(g)(2)(C) provides for liquidated damages in an amount equal to the greater of the interest on unpaid contributions or twenty percent of the unpaid contributions. In this case, Plaintiffs seek $26,681.94 in liquidated damages against Mainstream Specialties. *See* Dkt. No. 13-1 at ¶ 19. After reviewing Plaintiffs' motion and supporting documentation, the Court awards $26,681.94 in liquidated damages.

### d. Audit Fees

"Requests for audit fees are 'generally determined by utilizing the same standards the court applies in awarding attorneys' fees.'" *Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008) (quoting *King v. Unique Rigging Corp.*, No. 01-CV-3797, 2006 WL 3335011, *5 (E.D.N.Y. Oct. 27, 2006)). Accordingly, a party requesting audit fees must provide sufficient information to allow a court to determine the reasonableness of the fees requested.

In this case, Plaintiffs request $7,810.00 in audit fees. *See* Dkt. No. 13-32 at 12. To support that request, Plaintiffs provide an affidavit from their auditor and a series of invoices from the auditing firm. *See* Dkt. Nos. 13-22, 13-24. The invoices list the date, number of hours worked, and a description of the work performed. *See* Dkt. No. 13-24. After reviewing the invoices, the Court finds that Plaintiffs' request for audit fees is reasonable. Accordingly, the Court awards $7,810.00 in audit fees.

### e. Attorneys' Fees and Costs

In an ERISA action involving delinquent contributions, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). "[A] district court must begin its § 1132(g)(1) analysis by determining whether a party has achieved 'some degree of success on the merits,' but it is not required to award fees simply because this pre-condition has been met." *Toussaint v. JJ Weiser, Inc.*, 648 F.3d 108, 110 (2d Cir. 2011) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 254 (2010)). Here, Plaintiffs have achieved success on the merits, and the Court finds that an award of attorneys' fees is appropriate.

Plaintiffs request $13,490.30 in attorneys' fees and costs through August 14, 2020. *See* Dkt. No. 13-32 at 12. In support of their request, Plaintiffs have submitted a detailed narrative of

7

legal services showing that 33.95 attorney hours and 9.85 paralegal hours were spent on this matter. *See* Dkt. No. 13-25 at ¶ 25; Dkt. No. 13-31. After reviewing the time records, the Court finds that the amount of time spent by Plaintiffs' attorneys was reasonable. However, the Court finds that Plaintiffs' requested hourly rates of $323.00-$329.00 for attorneys and $173.00 for paralegals are too high.

In determining the reasonableness of attorneys' fees rates, the Second Circuit has held that a court is "to bear in mind all of the case-specific variables that [courts] have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate," which is "the rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). The relevant factors for a court to consider include the complexity and difficulty of the case, the resources required for effective prosecution of the case, the case's timing demands, the attorney's interest in achieving the ends of the litigation, the nature of representation, and the type of work involved in the case. *See id.* at 184 n.2.

Over the past few years, courts in this district have regularly awarded attorneys' fees at a rate of $210 for experienced attorneys and $80 for paralegals in ERISA cases. *See Bricklayers & Allied Craftworkers Local 2 v. Ne. Specialty Sys., Inc.*, No. 16-CV-610, 2017 WL 3731925, *4 (N.D.N.Y. Aug. 30, 2017); *Upstate N.Y. Eng'rs Health Fund v. S. Buffalo Elec., Inc.*, No. 15-CV-903, 2017 WL 1192178, *4 (N.D.N.Y. Mar. 29, 2017); *Upstate N.Y. Eng'rs Health Fund v. FMC Demolition, Inc.*, No. 13-CV-1307, 2015 WL 401113, *7 (N.D.N.Y. Jan. 28, 2015); *Upstate N.Y. Eng'rs Health Fund ex rel. Harrigan v. Ransom*, No. 13-CV-1434, 2015 WL 145441, *5 (N.D.N.Y. Jan. 12, 2015); *Cent. N.Y. Laborers' Health & Welfare Fund ex rel. Moro v. Taylor*, No. 11-CV-688, 2012 WL 3201950, *3 (N.D.N.Y. Aug. 3, 2012); *Upstate N.Y.*

*Carpenters Pension Fund v. The MBE Grp., Inc.*, No. 08-CV-129, 2011 WL 838849, *3 (N.D.N.Y. Mar. 4, 2011).

However, not long ago, this Court found that these rates were due to be raised and found hourly rates of $240 for an experienced attorney and $95 per hour for paralegals reasonable. *See Int'l Brotherhood of Elec. Workers Local Union No. 1249 Pension and Insurance Funds v. South Buffalo Electric, Inc.*, No. 15-CV-0682, 2018 WL 1224469, *4 (N.D.N.Y. Mar. 8, 2018). The Court finds such rates are appropriate in this case. Therefore, the Court awards Plaintiffs $9,083.75 in attorneys' fees, consisting of $8,148.00 for attorney work (33.95 hours) and $935.75 for paralegal work (9.85 hours). Additionally, the Court has reviewed Plaintiffs' request for $667.40 in costs and finds it reasonable and supported by the record.

### 3. Judgment Against Defendant Stevens

#### a. Liability

In the present matter, the summons and amended complaint were properly served on Defendant Stevens on May 1, 2020, and the Clerk of the Court entered default against him on June 3, 2020. *See* Dkt. Nos. 6, 9. Plaintiffs also allege that Defendant Stevens is a fiduciary of Defendant Corporation, and that he is personally liable for Defendant Corporation's unpaid contributions to the Funds. *See* Dkt. No. 13-32 at 12-15.

Under ERISA, in order to establish that an individual is personally liable for unpaid contributions as a fiduciary, a plaintiff must show that "(1) the unpaid contributions were plan assets and (2) [the defendant] exercised a level of control over those assets sufficient to make him a fiduciary." *In re Halpin*, 566 F.3d 286, 289 (2d Cir. 2009). First, "[w]hile unpaid employer contributions are not ordinarily assets of the plan, the parties to an agreement are free to provide

9

otherwise." *Trs. of the Road Carriers Local 707 Welfare Fund v. Goldberg*, No. 08-CV-0884, 2009 WL 3497493, *3 (E.D.N.Y. Oct. 28, 2009).

In this case, the trusts and collections policies for the Funds state that withheld contributions constitute plan assets. *See* Dkt. No. 13-32 at 14; Dkt. No. 13-15 at 83. Defendant Corporation is bound by those trusts and collections policies. *See id.* Therefore, the unpaid contributions were plan assets. Second, according to Plaintiffs, Defendant Stevens ran Defendant Corporation's day-to-day operations and determined whether money would be paid to the Funds. *See* Dkt. No. 1 at ¶¶ 74-76. Therefore, Plaintiffs have established that Defendant Stevens may be held personally liable under ERISA.

### *4. Damages Against Defendant Stevens*

"A fiduciary that unlawfully withholds plan assets is 'personally liable to make good to such plan any losses to the plan.'" *Bricklayers*, 779 F.3d at 188 (quoting 29 U.S.C. § 1109(a)). In this case, Plaintiffs seek to recover unpaid contributions, prejudgment interest, audit fees, and attorneys' fees and costs from Defendant Stevens. *See* Dkt. No. 13-32 at 12-20.

#### a. Unpaid Contributions

Plaintiffs claim that Defendant Stevens is liable for unpaid contributions owed to the Funds in the amount of $58,904.01. *See id.* at 15. Based on the previously stated law, as well as Plaintiffs' motion and supporting documentation, the Court awards Plaintiffs $58,904.01 in unpaid contributions as to Defendant Stevens.

#### b. Interest

Plaintiffs request $9,873.43 in interest on unpaid contributions to compensate for lost investment income. *See id.* at 16. Based on the previously stated law, as well as the Plaintiffs' supporting documentation, the Court finds this sum reasonable in order to make Plaintiffs whole

10

for lost investment income. The Court awards Plaintiffs $9,873.14 in interest on the unpaid contributions as to Defendant Stevens.

### c. Audit Fees and Attorneys' Fees

For the reasons stated above, the Court awards Plaintiffs $9,083.75 in attorneys' fees, consisting of $8,148.00 for attorney work (33.95 hours) and $935.75 for paralegal work (9.85 hours). Additionally, the Court has reviewed Plaintiffs' request for $667.40 in costs and finds it reasonable.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiffs' motion for default judgment (Dkt. No. 13) against Defendants Mainstream Specialties and Stevens is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in the amount of $133,049.11 against Mainstream Specialties Inc., consisting of (1) $73,866.41 in unpaid contributions and deductions, (2) $32,500.76 in interest, and (3) $26,681.94 in liquidated damages; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in the amount of $68,777.44 against Peter Stevens, consisting of (1) $58,904.01 in unpaid contributions and deductions and (2) $9,873.43 in interest; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in the amount of $17,561.15 against Mainstream Specialties Inc. and Peter Stevens consisting of (1) $9,083.75 in attorneys' fees, (2) $667.40 in costs, and (3) $7,810.00 in audit fees; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Plaintiffs' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 18, 2020
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge